**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **BRIGITTE RADICH**, individually and on behalf of all others similarly situated,<br>% Dann Law<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>**Plaintiff,**<br><br>v.<br><br>**SOUTHWOODS HEALTH**<br>% The Surgery Center At Southwoods, LLC, Reg. Agent<br>7629 Market Street, Suite 200<br>Youngstown, OH 44512<br><br>AND<br><br>**THE SURGERY CENTER AT SOUTHWOODS, LLC d/b/a THE SURGICAL HOSPITAL AT SOUTHWOODS**<br>% Angela Duskey, Reg. Agent<br>100 Debartolo Place, Suite 300<br>Youngstown, OH 44512<br><br>AND<br><br>**TEAM RECOVERY INC.**<br>% Leslie Gordon Engle, Reg. Agent<br>PO Box 1643<br>Stow, OH 44224<br><br>**Defendants.** | Case No.<br><br>Judge<br><br>**CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Plaintiff Brigitte Radich, individually and on behalf of all others similarly situated, brings this Class Action Complaint for Damages against Defendants Southwoods Health, The Surgery Center at Southwoods, LLC d/b/a The Surgical Hospital at Southwoods, and Team Recovery Inc.

Plaintiff makes these allegations with personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff brings this class action against Defendants for their participation in a systematic fraudulent billing scheme in which Defendants Southwoods Health and The Surgery Center at Southwoods, LLC d/b/a The Surgical Hospital at Southwoods ("Healthcare Provider Defendants") have, since 2020, deliberately billed patients for Revenue Code 036X (Operating Room Services) and Revenue Code 076X (Treatment Room) in connection with routine office visits at outpatient clinic locations that contain no operating rooms and at which no surgical procedures are performed. By falsely misrepresenting the nature, intensity, and location of services rendered, the Healthcare Provider Defendants have fraudulently inflated facility fee charges to health insurers and patients, induced the improper consumption of patients' insurance deductibles, and pursued collection of fraudulently obtained balances — damaging the credit of patients who refused to pay charges they did not legitimately owe.

## PARTIES

2. Plaintiff Brigitte Radich ("Plaintiff Radich") is a resident of Warren, Trumbull County, Ohio, who was defrauded by Defendants' systematic fraudulent billing scheme as described herein.

3. Defendant Southwoods Health ("Southwoods") is a registered trade name with the Ohio Secretary of State, registered by The Surgery Center at Southwoods, LLC, with its principal place of business at 7629 Market Street, Suite 200, Youngstown, Ohio 44512. Southwoods Health holds itself out as "The Mahoning Valley's Healthcare System" and operates as a comprehensive

healthcare network with locations throughout the region, including in Boardman, Salem, Howland, Canfield, Columbiana, Campbell, Warren, Calcutta, Poland, and Austintown. The Howland Township location provides specialty care services including Gastroenterology, General Surgery, Orthopaedics, Pain Management, Pediatric Gastroenterology, and Spine services. Plaintiff Radich's February 12, 2024 visit occurred at the Howland Township location.

4. Defendant The Surgery Center at Southwoods, LLC, doing business as The Surgical Hospital at Southwoods ("Southwoods Hospital"), is an Ohio limited liability company with its principal place of business at 7630 Southern Boulevard, Boardman, Ohio 44512. Southwoods Hospital originated as an outpatient surgery center and has grown into an integrated acute care facility offering inpatient and outpatient surgery, pediatric surgery, robot-assisted surgery, and endoscopy services. Plaintiff Radich has never visited Southwoods Hospital, and no services were rendered to her at that location.

5. Defendants Southwoods Health and The Surgery Center at Southwoods, LLC are referred to collectively throughout this Complaint as the "Healthcare Provider Defendants" and are jointly responsible for the fraudulent billing scheme described herein.

6. Defendant Team Recovery Inc. ("Team Recovery") is an Ohio corporation incorporated under the laws of Ohio, with its principal place of business at 3928 Clock Pointe Trail, Suite 101, Stow, Ohio 44224, Summit County. Team Recovery operates as a full-service accounts receivable management and debt collection company. At all times relevant to this action, Team Recovery acted as a collection agent for Southwoods Health in connection with the fraudulent debt described herein.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, as this action arises under the laws of the United States, including the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968; and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

8. This Court has supplemental jurisdiction over Plaintiff's state-law claims — including claims under the Ohio Consumer Sales Practices Act, common law fraud, and unjust enrichment — pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as Plaintiff's federal claims and arise from the same nucleus of operative facts.

9. This Court has personal jurisdiction over Defendant Southwoods Health because it is registered to conduct business in Ohio, maintains its principal place of business in Youngstown, Ohio, and committed the acts and omissions giving rise to this action in Ohio, including the fraudulent billing of Plaintiff and thousands of other Ohio patients at its Howland Township facility.

10. This Court has personal jurisdiction over Defendant The Surgery Center at Southwoods, LLC because it is an Ohio limited liability company incorporated and operating in this State, with its principal place of business in Boardman, Ohio, and because it was designated as the false place of service in the fraudulent billing scheme that is the subject of this action.

11. This Court has personal jurisdiction over Defendant Team Recovery Inc. because it is an Ohio corporation with its principal place of business in Stow, Ohio, it is registered under the laws of Ohio, and it directed the debt collection activities and credit reporting conduct at issue in this action at an Ohio consumer.

12. Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this

District, including Plaintiff's February 12, 2024 office visit at Southwoods Health's Howland Township facility in Trumbull County, the fraudulent billing and collection activity directed at Plaintiff in Warren, Ohio, and Defendants' operation of the billing scheme from facilities in Mahoning and Trumbull Counties. Intradistrict assignment to the Eastern Division is appropriate because the events giving rise to this action occurred primarily in Trumbull and Mahoning Counties, Ohio.

13. This Court may award injunctive, declaratory, monetary, and other relief pursuant to its authority under federal and state law, including 28 U.S.C. §§ 2201–2202.

## FACTUAL ALLEGATIONS

14. Southwoods Health is one of the most rapidly expanding healthcare systems in the Mahoning Valley, operating more than 40 locations throughout Mahoning and Trumbull Counties, Ohio, with over 300 medical providers serving thousands of patients each day. Southwoods holds itself out as "a complete network providing comprehensive care that meets the highest standards for quality and patient safety," offering services ranging from routine physician office visits and diagnostic testing to surgical services.

15. The Surgery Center at Southwoods, LLC operates The Surgical Hospital at Southwoods, an acute care hospital located at 7630 Southern Boulevard, Boardman, Ohio 44512 (the "Boardman Hospital"). The Boardman Hospital is the hub of Southwoods' integrated healthcare network and is the only Southwoods facility that houses operating rooms and full surgical services.

16. Southwoods Health's Howland Specialty Care location, located at 8740 E. Market Street, Howland, Ohio, houses physician offices, diagnostic imaging, and specialty services, including Gastroenterology, General Surgery, Orthopaedics, Pain Management, Pediatric

Gastroenterology, Spine services, and Urology. The Howland facility does not contain operating rooms. Patients requiring surgery, including outpatient surgery, are referred from the Howland location to the Boardman Hospital.

17. Southwoods Health employs a "provider-based" billing model for many of its clinic locations, including Howland Specialty Care. Under this model, satellite clinic locations are designated as outpatient departments of the Boardman Hospital, meaning they are legally and operationally treated as extensions of the main hospital facility. As a result, when a patient is seen at a provider-based clinic, Defendants are permitted to generate two separate charges for a single visit: (a) a professional fee for the physician or specialist who provided care; and (b) a facility fee for the use of the room, equipment, and support staff — billed as though the patient were receiving services at the hospital itself.

18. While the provider-based model is a recognized billing structure, it is subject to strict rules governing which facility fees may be charged and which revenue codes must be used to accurately reflect the services actually rendered.

19. The National Uniform Billing Committee ("NUBC") develops and maintains the standardized billing codes used by healthcare providers to categorize and report charges to insurers and patients. Among the NUBC's core responsibilities is the creation and maintenance of four-digit "Revenue Codes," which hospitals and provider-based facilities are required to use to classify charges on patient bills and insurance claims. The revenue code assigned to a charge communicates the nature and intensity of the service provided and directly determines the amount billed to the patient and reimbursed by the insurer. Because revenue codes are standardized across all providers and payers, licensed healthcare providers are presumed to know their meaning, proper application, and the billing consequences that flow from their selection.

20. Revenue Code 051X (Clinic Services) is the appropriate code series for visits to provider-based outpatient clinics. Revenue Code 0510, within this series, is the standard designation for routine office visits in a hospital-owned outpatient setting and is the correct facility fee code for the type of encounter Plaintiff and the Class received at the Howland Specialty Care location.

21. Revenue Code 036X (Operating Room Services) is the code series strictly reserved for major surgical procedures performed in a sterile surgical environment requiring anesthesia and specialized surgical staff. OR charges are among the highest-value facility fees in the hospital billing system and reflect the substantial resources associated with true surgical intervention. If a patient did not undergo surgery, a code within this series should not appear on that patient's bill under any circumstances.

22. In fact, billing a patient for a code within the Revenue Code 036X (OR Services) series when no surgical procedure was performed constitutes "upcoding" — a form of fraudulent billing that falsely represents a far greater intensity of service than what actually occurred, resulting in inflated reimbursements from insurers and inflated cost-sharing obligations for patients. Upcoding is a recognized and longstanding category of healthcare fraud. The Department of Health and Human Services Office of Inspector General ("OIG") first identified upcoding as a named fraud risk area in its Compliance Program Guidance for Hospitals, 63 Fed. Reg. 8987 (Feb. 23, 1998), defining it as the deliberate use of a billing code that reflects a higher level of service than was actually rendered. The OIG reaffirmed this guidance in its Supplemental Compliance Program Guidance for Hospitals, 70 Fed. Reg. 4858 (Jan. 31, 2005), which expressly requires that a hospital's coding guidelines "ensure that services are medically necessary and sufficiently documented and that the codes accurately reflect the intensity of hospital resources required to

deliver the services." This standard is dispositive here: Revenue Code 036X presupposes the performance of a major surgical procedure in a sterile operating room environment requiring anesthesia and specialized surgical staff — resources that were neither present at the Howland Specialty Care location nor utilized in connection with Plaintiff's routine office visit. The deliberate selection of a code within the Revenue Code 036X series to describe a routine outpatient encounter is, by definition, a misrepresentation of the intensity of services rendered and constitutes upcoding as that term is defined and understood by the OIG and the broader healthcare compliance community.

23. Notwithstanding these well-established billing standards, Defendants have systematically billed patients who underwent routine office visits at the Howland Specialty Care location — a facility with no operating rooms — using a code within the Revenue Code 036X series, falsely representing that those patients received outpatient surgical services at the Boardman Hospital. As admitted by Defendants' own administrative staff, Defendants have "been billing like this since we opened in 2020."

24. The Healthcare Provider Defendants' own published chargemaster, which they certified as "true, accurate, and complete" in accordance with 45 CFR § 180.50, independently establishes the fraudulent nature of their billing practices. For example, the Healthcare Provider Defendants' internal description of Revenue Code 0360 as a "minor proc 15 min increment" is itself a mischaracterization of what Revenue Code 036X means under NUBC standards. Revenue Code 036X is the Operating Room Services series — it is not a general-purpose minor procedure code and cannot be legitimately repurposed as one through an internal chargemaster description. The NUBC definition is nationally standardized and controlling; a hospital cannot override it by

assigning a different label in its chargemaster and then apply the code to encounters that do not meet its actual definition.

25. The OIG Supplemental Compliance Program Guidance for Hospitals, 70 Fed. Reg. 4858 (Jan. 31, 2005), specifically identifies inaccurate charge description masters — including the failure to maintain "correct associations between procedure codes and revenue codes" — as a significant compliance risk area. The Healthcare Provider Defendants' internal redescription of Revenue Code 0360 in a manner that obscures its true meaning from patients is precisely the kind of inaccuracy the OIG identified as a fraud risk, and it cannot serve as a defense to the deliberate misapplication of the code.

**<u>FACTS RELEVANT TO PLAINTIFF BRIGITTE RADICH</u>**

26. On February 12, 2024, Plaintiff Brigitte Radich presented to Southwoods Health's Howland Specialty Care location at 8740 E. Market Street, Howland, Ohio, for her initial office visit with a new physician. During patient intake, clinical staff performed a 15-second, non-imaging bladder scan simultaneously with other routine vital sign measurements. Plaintiff received no surgical services and never visited the Southwoods Hospital at any time in connection with this visit.

27. Following her February 12, 2024 visit, the Healthcare Provider Defendants submitted claims to Plaintiff's health insurer United Healthcare, ("UHC") for the services rendered at the Howland Specialty Care location. The Healthcare Provider Defendants billed $357.00 under Revenue Code 0510 (General Outpatient Clinic / office visit) and $359.00 under Revenue Code 0361 (Operating Room Services) — a facility fee designation that presuppose the performance of a procedure requiring a sterile surgical environment with operating room resources. The Howland Specialty Care location does not contain operating rooms, and the 15-second, non-imaging bladder

scan performed during Plaintiff's routine patient intake does not constitute the type of procedure that warrants a primary surgical revenue code as though Plaintiff had received outpatient surgical services. The Healthcare Provider Defendants transmitted these fraudulently coded claims to UHC electronically, generating Explanations of Benefits dated March 1, 2024, and March 4, 2024.

28. UHC processed these claims without scrutiny and applied $716.00 in fraudulent facility fees to Plaintiff's insurance deductible. UHC's Explanations of Benefits dated March 1, 2024, and March 4, 2024, described the $357.00 charge billed under Revenue Code 0510 as "Office Visits" and the $359.00 charge billed under Revenue Code 0361 as "Outpatient Services." The designation of Revenue Code 0361 as the primary surgical code determined the payment structure for the entire claim; the $357.00 office visit charge billed under Revenue Code 0510 was processed and paid consistent with that surgical primary code designation. UHC's EOBs did not identify the revenue codes underlying these charges, leaving Plaintiff without any means of identifying the source of the inflated billing from the EOBs alone.

29. Upon receiving UHC's Explanations of Benefits in March 2024, Plaintiff contacted the Healthcare Provider Defendants directly to dispute the charges. During that call, Plaintiff spoke with a member of the Healthcare Provider Defendants' administrative staff and questioned why Revenue Code 0361 (OR Services) had been applied to a routine office visit at the Howland Specialty Care location — a facility she knew did not perform surgical procedures. Rather than acknowledging an error or initiating a review, the administrative staff member confirmed that the billing was intentional, stating that the Healthcare Provider Defendants have "been billing like this since we opened in 2020." This admission established that the fraudulent billing practices described herein are not the product of isolated clerical error or inadvertence, but rather reflect a deliberate, systematic, and long-standing policy uniformly applied to patients across the

Healthcare Provider Defendants' network since the inception of their operations.

30. Plaintiff subsequently received a billing statement from the Healthcare Provider Defendants dated May 2, 2024, demanding payment of $716.00, with payment due by May 23, 2024. The May billing statement described the $357.00 charge as "Treatment Room" and the $359.00 charge as "OR Services," but did not display the underlying revenue codes. The label "Treatment Room" was itself misleading: the code actually transmitted to UHC for that charge was Revenue Code 0510 (General Outpatient Clinic) — a designation that accurately reflects a routine clinic visit but bears no resemblance to the "Treatment Room" description presented to Plaintiff. By using patient-facing descriptions that did not correspond to the revenue codes transmitted to her insurer, the Healthcare Provider Defendants deprived Plaintiff of any meaningful ability to investigate the basis of the charges or identify the billing codes driving her financial obligation.

31. At no point did Plaintiff receive any communication from the Health Provider Defendants indicating that her disputed account had been referred to a collection agency. Plaintiff received no dunning letters, collection notices, or any other correspondence from Team Recovery Inc. prior to October 2025.

32. Plaintiff first learned that her account had been sent to collections in October 2025, when she received notification that Team Recovery Inc. had reported a $716.00 delinquent debt to one or more consumer credit reporting agencies, causing negative information to appear on her credit report. On or about October 1, 2025 — more than seventeen months after Plaintiff first disputed the fraudulent charges — Team Recovery reported this debt to credit reporting agencies without having first verified that the underlying debt was legitimate or lawfully owed.

33. As a direct result of the Health Provider Defendants'' fraudulent billing scheme and

Team Recovery's credit reporting, Plaintiff has suffered damage to her credit score and creditworthiness; consumption of her insurance deductible with fraudulent charges; emotional distress, anxiety, and frustration arising from the billing dispute and collection activity; and significant time and expense incurred in attempting to dispute the fraudulent charges through multiple channels, including with Southwoods Health, UHC, and Team Recovery.

## CLASS ALLEGATIONS

34. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). Plaintiff seeks to represent the following Class:

> All patients of the Healthcare Provider Defendants who, from 2020 through the present, were billed for services rendered at a Southwoods Health office location using a code within the Revenue Code 036X (OR Services) series as a primary billing code when the services received were actually performed in a clinical office setting and did not constitute a surgical procedure.

Excluded from the Class are Defendants and their respective parents, subsidiaries, affiliates, officers, and directors; any entity in which any Defendant has a controlling interest; the judges assigned to this matter, their staff, and their immediate family members; and any persons who timely and validly request exclusion from the Class.

35. **Numerosity — Fed. R. Civ. P. 23(a)(1).** The Class is so numerous that joinder of all members is impracticable. Defendants have admitted through their administrative staff that they have "been billing like this since we opened in 2020," establishing that the challenged billing practices have been applied uniformly to every patient who received services at Southwoods Health office locations over more than four years of operations. Upon information and belief, the Class includes thousands of members whose identities are readily ascertainable from Defendants' billing records.

36. **Commonality — Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact common to the Class, including:

a. Whether the Healthcare Provider Defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

b. Whether the Healthcare Provider Defendants' billing practices constitute mail fraud under 18 U.S.C. § 1341 and/or wire fraud under 18 U.S.C. § 1343;

c. Whether the Healthcare Provider Defendants' systematic use of codes within the Revenue Code 036X (OR Services) series for services performed in an office setting constitutes fraudulent upcoding and place-of-service misrepresentation;

d. Whether the Healthcare Provider Defendants' billing practices violated the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 et seq.;

e. Whether the Healthcare Provider Defendants were unjustly enriched by their fraudulent billing scheme;

f. Whether the Healthcare Provider Defendants acted knowingly and with intent to defraud; and

g. The proper measure of damages and other relief.

37. **Typicality — Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were subjected to the same fraudulent billing scheme, received the same categories of fraudulent charges arising from the same billing practices, and sustained injuries of the same type and nature.

38. **Adequacy of Representation — Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in prosecuting complex class actions, RICO

claims, and consumer protection litigation, who are committed to the vigorous prosecution of this action.

39. **Predominance and Superiority — Fed. R. Civ. P. 23(b)(3).** This action is maintainable as a class action under Rule 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members, while significant in the aggregate, may be modest relative to the burden and expense of individual litigation, making it impracticable for Class members to pursue their claims independently. Class treatment will also prevent inconsistent adjudications and conserve judicial resources.

40. **Injunctive and Declaratory Relief — Fed. R. Civ. P. 23(b)(2).** Certification is also appropriate under Rule 23(b)(2) because the Healthcare Provider Defendants have acted and continue to act on grounds generally applicable to the Class — namely, their uniform fraudulent billing practices — making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

## COUNT I
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. §§ 1961-1968

***On Behalf of Plaintiff and the Class Against the Healthcare Provider Defendants***

41. Plaintiff alleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

### The Enterprise

42. Beginning in 2020 and continuing through the present, the Healthcare Provider Defendants have operated and conducted an enterprise within the meaning of 18 U.S.C. § 1961(4)

— an association-in-fact consisting of Southwoods Health, its physicians and administrative staff, the Boardman Hospital, and third-party billing and collection agencies, including Team Recovery Inc. (the "Enterprise"). The Enterprise is engaged in, and its activities affect, interstate commerce through the electronic transmission of fraudulent billing claims to health insurers, the mailing of fraudulent billing statements and collection demands to patients across state lines, electronic funds transfers and insurance payments crossing state lines, and the reporting of fraudulent debts to national credit bureaus.

43. The Enterprise functions as a continuing unit with a common purpose: to generate inflated healthcare revenues by systematically misrepresenting the nature, location, and billing codes of medical services provided to patients, and transmitting those false representations to patients and insurers through the United States mail and interstate wire communications.

**The Pattern of Racketeering Activity**

44. The Healthcare Provider Defendants have conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of repeated and related acts of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. The pattern is neither isolated nor incidental — it is the core operating method of the Enterprise, applied uniformly to thousands of patients since 2020, and expressly confirmed by Defendants' own administrative staff, who admitted that Defendants have "been billing like this since we opened in 2020."

45. The scheme operates as follows: when patients present for routine office visits at a Southwoods Health clinic location, clinical staff perform a non-surgical procedure, such as a non-imagine bladder scan, during patient intake simultaneously with other routine vital sign measurements. Rather than properly bundling this procedure into the Evaluation & Management

code for the office visit as required under CMS global billing and bundling rules, Defendants unbundle the bladder scan and bill it separately as a surgical service — a practice known as fraudulent unbundling.

46. Defendants compound this fraud by billing $357.00 under Revenue Code 0510 (General Outpatient Clinic) and $359.00 under Revenue Code 0361 (OR Services) — despite the fact that Revenue Code 0361 presupposes the performance of a major surgical procedure in a sterile surgical environment. By designating Revenue Code 0361 as the primary code on the claim, Defendants cause UHC and other insurers to process and pay the entire encounter as a surgical event, generating substantially higher facility fee reimbursements than would apply under clinic services billing. The 0510 code, while technically accurate in isolation as a designation for a clinic visit, is rendered improper when paired with Revenue Code 0361 as the primary surgical driver of the claim. Defendants have described the 0510-coded charge on patient-facing billing statements as "Treatment Room" — a label that does not correspond to the revenue code actually transmitted to insurers, and that further obscures from patients the nature and basis of the charges billed to their accounts.

**Acts of Mail and Wire Fraud**

47. In furtherance of the scheme, the Healthcare Provider Defendants have committed numerous acts of mail fraud by causing fraudulent billing statements to be sent via the United States mail, including the billing statement dated May 2, 2024, sent to Plaintiff demanding payment of $716.00 — $357.00 for "Treatment Room" and $359.00 for "OR Services" — for a routine office visit at a provider-based outpatient clinic that does not contain operating rooms and at which no procedure warranting either facility fee designation was performed. Upon information and belief, the Healthcare Provider Defendants have caused substantially similar fraudulent billing

statements to be mailed to thousands of patients since 2020. The Healthcare Provider Defendants further caused collection notices to be transmitted by Team Recovery Inc., acting as their collection agent, demanding payment of these fraudulently inflated balances from patients who disputed or failed to pay the improper charges.

48. The Healthcare Provider Defendants have likewise committed numerous acts of wire fraud by electronically transmitting fraudulent insurance claims to UHC and other health insurers designating Revenue Code 0361 (OR Services) as the primary facility fee code for routine office visits at the Howland Specialty Care location — a provider-based outpatient clinic that does not contain operating rooms and at which no procedure warranting an OR Services facility fee was performed. These claims simultaneously applied Revenue Code 0510 (General Outpatient Clinic) to the office visit component of the same encounters, correctly identifying in the insurer-facing claim the clinic-based nature of the services while designating Revenue Code 0361 as the primary surgical code driving reimbursement — a pairing that induced UHC and other insurers to process and reimburse routine office visits as surgical events, generating facility fee reimbursements to which the Healthcare Provider Defendants were not entitled and causing fraudulently inflated charges to be applied to patients' insurance deductibles. UHC's electronic processing of these fraudulent claims generated Explanations of Benefits dated March 1, 2024, and March 4, 2024, which reported the Revenue Code 0510 charge to Plaintiff as "Office Visits" and the Revenue Code 0361 charge as "Outpatient Services" — descriptions that differed materially from the "Treatment Room" and "OR Services" labels used on the Healthcare Provider Defendants' own patient-facing billing statement, leaving Plaintiff without any means of connecting the charges on her statement to the codes transmitted to her insurer or identifying the revenue codes driving her financial obligation. The Healthcare Provider Defendants, through their collection agent Team

Recovery Inc., further transmitted false account information to national consumer credit reporting agencies, including the reporting of Plaintiff's fraudulently obtained $716.00 balance on or about October 1, 2025.

49. Each false claim submitted to an insurer or patient constitutes a separate and distinct predicate act, complete unto itself, and involving a separate insured or patient. The pattern of racketeering activity constitutes both a closed-ended pattern — extending continuously from 2020 through the present and encompassing thousands of fraudulent claims — and an open-ended pattern with a threat of continued repetition, as Defendants have expressly stated their intention to continue billing in the same manner and have taken no steps to discontinue their fraudulent practices.

50. The Healthcare Provider Defendants, as persons associated with the Enterprise, have conducted and participated, directly and indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(c). Plaintiff and the Class were directly and proximately injured in their business or property by reason of these violations, including through: payment of fraudulently inflated medical bills; deductible charges applied to fraudulently coded claims; out-of-pocket expenses for services misrepresented as outpatient surgical services; damage to credit scores and creditworthiness resulting from collection efforts on fraudulently obtained debts; and time and expense incurred in disputing fraudulent charges. As a direct result of Defendants' RICO violations, Plaintiff Radich has been placed into collections for $716.00, which debt appears on her credit report.

51. Defendants acted knowingly and with intent to defraud. The affirmative misrepresentations required to execute this scheme — including the deliberate selection of false place-of-service codes, false revenue codes, and the unbundling of procedures that CMS rules

require to be bundled — cannot be the product of inadvertence or mistake. Plaintiff and the Class are entitled to treble damages, attorneys' fees, and costs pursuant to 18 U.S.C. § 1964(c).

**COUNT II**
**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**R.C. 1345.01, *et al.***
***On Behalf of Plaintiff and the Class Against the Healthcare Provider Defendants***

52. Plaintiff alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

53. The Ohio Consumer Sales Practices Act ("CSPA") prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with a consumer transaction. O.R.C. §§ 1345.02, 1345.03.

54. Plaintiff Brigitte Radich is a "consumer" within the meaning of O.R.C. § 1345.01(D), as she engaged in a consumer transaction with the Healthcare Provider Defendants for the provision of medical services.

55. The Healthcare Provider Defendants are "suppliers" within the meaning of O.R.C. § 1345.01(C), as they are persons engaged in the business of effecting consumer transactions through the provision of medical services to patients.

56. The provision of medical services to Plaintiff and the Class constitutes a "consumer transaction" within the meaning of O.R.C. § 1345.01(A), as it involves services provided primarily for personal, family, or household purposes.

57. The Healthcare Provider Defendants violated O.R.C. § 1345.02 by engaging in a systematic pattern of unfair and deceptive billing practices in connection with their consumer transactions with Plaintiff and the Class. Specifically, the Healthcare Provider Defendants misrepresented the nature of the services rendered to Plaintiff and the Class by deliberately applying Revenue Code 0361 (OR Services) as the primary facility fee code to routine office visits

at the Howland Specialty Care location — a facility fee designation that presupposes the performance of a major surgical procedure in a sterile surgical environment requiring anesthesia and specialized surgical staff. The Healthcare Provider Defendants simultaneously billed Revenue Code 0510 (General Outpatient Clinic) for the office visit component of these encounters — correctly identifying in their insurer-facing claims that the visits were clinic-based — while describing that same charge on patient-facing billing statements as "Treatment Room," a label that does not correspond to the revenue code transmitted to insurers and that further obscured the nature of the billing from patients. The Howland Specialty Care location does not contain operating rooms, and the services rendered to Plaintiff and the Class during their routine office visits did not constitute procedures warranting an OR Services facility fee under any applicable billing standard. The deliberate pairing of Revenue Code 0361 with Revenue Code 0510 — with 0361 designated as the primary surgical code — caused insurers to process and reimburse the entire encounter as a surgical event, generating facility fee reimbursements to which the Healthcare Provider Defendants were not entitled and shifting fraudulently inflated cost-sharing obligations to Plaintiff and the Class. That Defendants correctly applied Revenue Code 0510 to identify the clinic-based nature of these visits while simultaneously designating Revenue Code 0361 as the primary code demonstrates that their misrepresentation was knowing and deliberate, not the product of coding confusion.

58. The Healthcare Provider Defendants' conduct was not the product of inadvertence or clerical error. When Plaintiff contacted the Healthcare Provider Defendants to dispute the May 2, 2024 billing statement, their administrative staff confirmed that the billing was intentional, stating that the Healthcare Provider Defendants have "been billing like this since we opened in 2020." This admission establishes that the deceptive billing practices described herein were

deliberate, uniform, and applied systematically to patients across the Healthcare Provider Defendants' network for more than four years.

59. The Healthcare Provider Defendants' conduct independently violated O.R.C. § 1345.03, which prohibits suppliers from engaging in unconscionable acts or practices in connection with a consumer transaction. The Healthcare Provider Defendants knowingly exploited Plaintiff's and Class members' lack of familiarity with medical billing codes, revenue code designations, and place-of-service classifications to systematically overcharge them for services never rendered as described. Patients presenting for routine office visits had no independent means of verifying the accuracy of the billing codes applied to their accounts, and no reason to suspect that their healthcare provider was deliberately misrepresenting the nature and location of services to inflate charges.

60. The unconscionable nature of the Healthcare Provider Defendants' conduct is further demonstrated by the gross disparity between the value of the services actually received — a routine office visit with a 15-second bladder scan — and the amount charged — $716.00 driven by the Healthcare Provider Defendants' designation of Revenue Code 0361 (OR Services) as the primary facility fee code, which caused the entire encounter to be processed and reimbursed as a surgical event despite being performed at a clinic location with no operating rooms. On the patient-facing billing statement, these charges were presented as "Treatment Room" and "OR Services" — descriptions that gave Plaintiff no means of identifying the underlying revenue codes or understanding why a routine clinic visit had generated hospital surgical-level facility fees. The Healthcare Provider Defendants compounded this harm by referring disputed balances to Team Recovery Inc. for collection and credit reporting, damaging the credit of patients who refused to pay charges they did not legitimately owe, without ever disclosing that the underlying billing was

the product of a deliberate, years-long scheme.

61. The Healthcare Provider Defendants' violations of the CSPA were committed knowingly within the meaning of O.R.C. § 1345.09(B). The admission by their administrative staff that they have "been billing like this since we opened in 2020" demonstrates both actual awareness of the billing practices and a conscious decision to continue them. The systematic nature of the scheme — which required affirmative, deliberate coding decisions involving the selection of false revenue codes — could not have resulted from mistake or inadvertence. As licensed healthcare providers, the Healthcare Provider Defendants are presumed to know CMS billing rules and proper coding practices, including the requirement that revenue codes accurately reflect the services rendered and the location where they were provided.

62. The Healthcare Provider Defendants independently violated the CSPA through their failure to comply with federal and state hospital price transparency requirements, which are consumer protection statutes specifically designed to ensure that patients receive accurate pricing information in connection with healthcare services and which establish additional predicates for CSPA liability under R.C. §§ 1345.02(B)(1) and 1345.02(B)(5).

63. The Centers for Medicare and Medicaid Services hospital price transparency regulations, 45 CFR § 180.50, require hospitals to publish a machine-readable standard charges file containing charge information that is "true, accurate, and complete." The Healthcare Provider Defendants published their chargemaster on the Southwoods Health website in purported compliance with this requirement and certified therein that the charge information is "true, accurate, and complete as of the date indicated." That certification is false in two material respects.

64. First, the Healthcare Provider Defendants' chargemaster describes Revenue Code 0360 as a "minor proc 15 min increment" — a description that materially mischaracterizes the

code's actual meaning and proper application under NUBC standards, which define the 036X series as exclusively reserved for Operating Room Services. Second, the Healthcare Provider Defendants have been systematically applying Revenue Code 0361 as the primary facility fee code for routine office visits at provider-based outpatient clinic locations since 2020 — pairing it with Revenue Code 0510 (General Outpatient Clinic) on insurer-facing claims while presenting patients with billing statements that describe the 0510-coded charge as "Treatment Room" and the 0361-coded charge as "OR Services," without disclosing the underlying revenue codes to patients. This combination is wholly inconsistent with and directly contradicted by the chargemaster descriptions the Healthcare Provider Defendants certified as accurate. A patient reviewing the Healthcare Provider Defendants' published chargemaster would see "minor proc 15 min increment" and have no way of knowing that this description corresponds to an Operating Room Services code strictly reserved for major surgical procedures under NUBC standards — nor would that patient have any means of connecting the "Treatment Room" label on their billing statement to Revenue Code 0510, or the "OR Services" label to Revenue Code 0361, as none of the patient-facing documents disclosed the underlying codes driving their charges. This layered obfuscation — across the chargemaster, the insurer-facing claim, and the patient-facing billing statement — is independently actionable as a deceptive practice under O.R.C. § 1345.02.

65. The Healthcare Provider Defendants additionally violated Ohio's hospital billing transparency statute, R.C. § 3727.33, which requires hospitals to provide patients with itemized statements of charges that accurately reflect the services rendered. The billing statement sent to Plaintiff on May 2, 2024, violated this requirement in two independent respects: it described charges using patient-facing labels — "Treatment Room" and "OR Services" — that did not correspond to the revenue codes actually transmitted to UHC, and it demanded payment for an OR

Services facility fee for a visit at a facility with no operating rooms at which no surgical procedure was performed. A billing statement that neither accurately identifies the codes underlying the charges nor accurately describes the services rendered cannot satisfy the itemization requirement of R.C. § 3727.33, and its systematic issuance to patients across the Healthcare Provider Defendants' network constitutes an independently actionable unfair and deceptive practice under R.C. § 1345.02.

66. The Healthcare Provider Defendants' violations of 45 CFR § 180.50 and R.C. § 3727.33 are particularly egregious in light of the fact that those requirements exist specifically to protect healthcare consumers — including Plaintiff and the Class — from exactly the kind of opaque, misleading billing practices at issue in this action. The Healthcare Provider Defendants exploited the complexity of revenue codes and the gap between their published chargemaster descriptions and the actual meaning of those codes under NUBC standards to systematically overcharge patients who had no independent means of verifying the accuracy of the billing codes applied to their accounts. Patients reviewing the Healthcare Provider Defendants' published chargemaster in an attempt to understand their bills would have been further misled by the Healthcare Provider Defendants' misdescription of Revenue Code 0360, compounding the deception already inherent in the billing scheme itself.

67. As a direct and proximate result of the Healthcare Provider Defendants' violations of the CSPA, Plaintiff and the Class have suffered actual damages including fraudulently inflated medical bills, deductible charges applied to fraudulently coded claims, damage to credit scores and creditworthiness resulting from collection activity on fraudulently obtained debts, and time and expense incurred in disputing fraudulent charges.

68. Plaintiff and the Class are entitled to actual damages pursuant to O.R.C. §

1345.09(A); treble damages for knowing violations pursuant to O.R.C. § 1345.09(B); reasonable attorneys' fees and costs pursuant to O.R.C. § 1345.09(F); and declaratory and injunctive relief requiring the Healthcare Provider Defendants to cease their fraudulent billing practices and remediate harm caused to Plaintiff and the Class.

## COUNT III
## FRAUD
***On Behalf of Plaintiff and the Class Against the Healthcare Provider Defendants***

69. Plaintiff alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

70. The Healthcare Provider Defendants made materially false representations of fact to Plaintiff, to the Class, and to UHC in connection with the billing for services rendered at their off-site clinic locations, including the Howland Specialty Care location. Specifically, the Healthcare Provider Defendants submitted claims to UHC designating Revenue Code 0361 (OR Services) as the primary facility fee code for routine office visits at the Howland Specialty Care location, while simultaneously applying Revenue Code 0510 (General Outpatient Clinic) to the office visit component of the same encounters. The Healthcare Provider Defendants' patient-facing billing statement sent to Plaintiff on May 2, 2024, demanded payment of $357.00 described as "Treatment Room" and $359.00 described as "OR Services" for a February 12, 2024 visit during which Plaintiff received only a routine office visit with a 15-second, non-imaging bladder scan performed during patient intake — neither of which labels corresponded to the revenue codes actually transmitted to UHC, leaving Plaintiff without any means of identifying the codes driving her financial obligation.

71. The designation of Revenue Code 0361 as the primary facility fee code was the operative misrepresentation: it determined how UHC classified and reimbursed the entire

encounter, how much of Plaintiff's deductible was consumed, and what Plaintiff was billed as her remaining financial obligation. That Defendants simultaneously applied Revenue Code 0510 — the correct code for a clinic visit — to the same encounter establishes both the materiality and the deliberateness of the misrepresentation. A provider that correctly identifies a visit as clinic-based through its own code selection cannot claim that its simultaneous designation of that same visit as a surgical event was inadvertent. The financial consequences flowing from the 0361 designation were therefore the direct and exclusive product of a knowing and deliberate coding decision.

72. As licensed healthcare providers, the Healthcare Provider Defendants are presumed to know CMS billing rules and proper revenue code designations, including that Revenue Code 0361 is strictly reserved for major surgical procedures performed in a sterile surgical environment and that Revenue Code 0510 is the correct designation for routine visits to provider-based outpatient clinics. But this case does not rest on presumed knowledge alone. The Healthcare Provider Defendants' own billing conduct establishes actual knowledge: by applying Revenue Code 0510 to the office visit component of Plaintiff's encounter — correctly identifying the clinic-based nature of the visit in their own insurer-facing claim — the Healthcare Provider Defendants demonstrated contemporaneous, affirmative awareness that the services rendered were routine outpatient clinic visits, not surgical procedures. Their simultaneous designation of Revenue Code 0361 as the primary facility fee code for that same encounter cannot be reconciled with any good-faith misunderstanding of applicable billing rules. It is direct evidence of intentional misrepresentation.

73. Moreover, when Plaintiff contacted the Healthcare Provider Defendants to dispute the May 2, 2024 billing statement, their administrative staff did not claim error or offer to investigate — they confirmed that the billing was deliberate, stating that the Healthcare Provider

Defendants have "been billing like this since we opened in 2020." This admission further forecloses any argument that the misrepresentations were the product of inadvertence, clerical error, or good-faith misunderstanding of applicable billing rules.

74. The Healthcare Provider Defendants made these false representations with the intent to induce Plaintiff, the Class, and their respective insurers to pay fraudulently inflated facility fees. The scheme was designed to exploit the complexity of medical billing codes — and patients' and insurers' reasonable reliance on healthcare providers to apply those codes accurately and honestly — to systematically generate revenue to which the Healthcare Provider Defendants were not entitled. The continuation of this scheme for more than four years, affecting thousands of patients, further establishes the deliberate and calculated nature of the Healthcare Provider Defendants' intent.

75. Plaintiff and the Class justifiably relied on the Healthcare Provider Defendants' false representations. Patients presenting for routine office visits have no independent means of verifying the revenue codes applied to their accounts and no specialized knowledge of the distinctions between Revenue Code 0361 (OR Services) and Revenue Code 0510 (General Outpatient Clinic). That reliance was not merely passive — it was the foreseeable and intended result of a billing structure specifically designed to prevent patients from identifying the misrepresentation. The revenue codes driving Plaintiff's charges did not appear on her billing statement; the labels on her billing statement did not correspond to the codes transmitted to her insurer; and the descriptions on her insurer's EOBs differed materially from both. No patient navigating that three-layer disconnect could reasonably be expected to identify that a surgical revenue code had been applied to a routine clinic visit, let alone quantify its financial consequences. Plaintiff's insurer, UHC, likewise relied on the Healthcare Provider Defendants'

false representations in processing the fraudulent claims and applying $716.00 in fraudulent facility fees to Plaintiff's deductible. That reliance was reasonable under the circumstances — insurers processing high volumes of claims are entitled to rely on the accuracy of the revenue codes submitted by licensed healthcare providers, and nothing on the face of the submitted claims would have indicated to UHC that the 0361 designation was being applied to a visit at a facility with no operating rooms.

76. In addition to their affirmative misrepresentations, the Healthcare Provider Defendants fraudulently concealed material facts from Plaintiff and the Class. The concealment operated on multiple levels simultaneously. The Healthcare Provider Defendants did not disclose to patients that Revenue Code 0361 (OR Services) — a code strictly reserved for major surgical procedures performed in a sterile operating room — was being designated as the primary facility fee code for routine clinic visits; that Revenue Code 0510, the correct clinic visit code, was being applied to the same encounters while being relabeled as "Treatment Room" on patient-facing billing statements; that the bladder scan was a routine procedure required under CMS billing rules to be bundled into the office visit charge rather than unbundled and billed separately as a surgical service; that the resulting charges were substantially higher than what Plaintiff and the Class would have been charged had the services been properly coded; and that the Healthcare Provider Defendants had been engaged in this systematic billing scheme since 2020. This concealment was not passive — it was structural. By ensuring that the revenue codes driving patients' charges appeared on neither the billing statement nor the EOB, and by using patient-facing labels that bore no relationship to the codes transmitted to insurers, the Healthcare Provider Defendants created a billing environment in which discovery of the underlying misrepresentation was effectively foreclosed regardless of the diligence exercised by the patient. The Healthcare Provider

Defendants had an affirmative duty to disclose these facts to Plaintiff and the Class given the fiduciary nature of the physician-patient relationship and their superior knowledge of medical billing practices and revenue code designations — a duty rendered all the more compelling by the deliberate structural barriers they erected against its independent discovery.

77. As a direct and proximate result of the Healthcare Provider Defendants' fraud and the justifiable reliance of Plaintiff and the Class thereon, Plaintiff and the Class have suffered actual damages including fraudulently inflated facility fees; deductible charges applied to fraudulently coded claims; damage to credit scores and creditworthiness resulting from collection activity on fraudulently obtained debts, including the reporting of Plaintiff's $716.00 balance to consumer credit reporting agencies by Team Recovery Inc. on or about October 1, 2025; and time and expense incurred in disputing fraudulent charges through multiple channels.

78. Plaintiff and the Class are entitled to compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, based on the Healthcare Provider Defendants' knowing, deliberate, and years-long scheme to defraud patients and their insurers through systematic revenue code manipulation.

**COUNT IV**
**BREACH OF CONTRACT**
***On Behalf of Plaintiff and the Class Against the Healthcare Provider Defendants***

79. Plaintiff alleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

80. When Plaintiff and the Class presented for medical services at the Healthcare Provider Defendants' provider-based outpatient clinic locations, including the Howland Specialty Care location, they entered into contractual relationships with the Healthcare Provider Defendants for the provision of medical services. Those contractual relationships were formed upon

presentation for care and incorporated by reference the Healthcare Provider Defendants' publicly disseminated representations regarding their billing practices, including the representations contained in the Healthcare Provider Defendants' Provider-Based Billing Fact Sheet (*see* **Exhibit 1**, SW PBB Fact Sheet) and their Price Transparency disclosures published on the Southwoods Health website.

81. The Healthcare Provider Defendants' Provider-Based Billing Fact Sheet, which is distributed to patients and published on Southwoods Health's website, expressly defines the scope of facility fees that patients will be charged under the provider-based billing model. Specifically, the Provider-Based Billing Fact Sheet states that a patient's billing statement for each visit will show "one charge for the facility, which covers the use of the room, any medical or technical supplies, equipment and support staff." This representation constitutes an express contractual term — or at minimum a binding representation incorporated into the patient-provider contract — defining the nature, scope, and basis of the facility fees the Healthcare Provider Defendants are permitted to charge patients receiving services at their provider-based outpatient clinic locations.

82. The Healthcare Provider Defendants' Price Transparency disclosures, also published on the Southwoods Health website, further represent that their published charge information is "true, accurate, and complete" as of the applicable file date, and that Southwoods' chargemaster reflects the standard charges for services provided across all hospital departments, both on and off its main campus. Patients and Class members reasonably relied on these representations in understanding what charges they would incur for services received at Southwoods Health's provider-based clinic locations.

83. The Healthcare Provider Defendants breached these contractual terms by systematically billing Plaintiff and the Class for Revenue Code 0361 (OR Services) in connection

with routine office visits at provider-based outpatient clinic locations — including the Howland Specialty Care location — that do not contain operating rooms and at which no surgical procedures were performed. Revenue Code 0361 (OR Services), which presupposes the performance of a major surgical procedure in a sterile operating room environment requiring anesthesia and specialized surgical staff, is wholly inconsistent with — and directly contradicts — the scope of facility fees the Healthcare Provider Defendants expressly defined and represented to patients in their Provider-Based Billing Fact Sheet. A facility fee purportedly covering "the use of the room, any medical or technical supplies, equipment and support staff" cannot, by definition, encompass OR-level surgical facility fees at a location that contains no operating rooms and performs no surgical procedures. The Healthcare Provider Defendants' simultaneous application of Revenue Code 0510 (General Outpatient Clinic) to the office visit component of these same encounters — while describing that charge on patient-facing statements as "Treatment Room" rather than disclosing the underlying code — further breached their contractual obligations by presenting patients with billing descriptions that did not accurately or consistently reflect the codes transmitted to insurers, depriving Plaintiff and the Class of any meaningful ability to verify the accuracy of the charges applied to their accounts.

84. The Healthcare Provider Defendants further breached their contractual representations by failing to ensure that the charges applied to Plaintiff's and Class members' accounts were "true, accurate, and complete" as represented in their Price Transparency disclosures. The deliberate designation of Revenue Code 0361 (OR Services) as the primary facility fee code for routine clinic visits — applied alongside Revenue Code 0510 (General Outpatient Clinic), which correctly identified the clinic-based nature of those visits in the Healthcare Provider Defendants' own insurer-facing claims — directly and materially contradicts

the Healthcare Provider Defendants' published representation that their standard charge information accurately reflects the services provided at their facilities. A chargemaster certified as "true, accurate, and complete" cannot be reconciled with a systematic billing practice in which a surgical revenue code is designated as the primary facility fee for encounters that the Healthcare Provider Defendants' own contemporaneous code selection confirms were routine outpatient clinic visits. The further mislabeling of the Revenue Code 0510 charge as "Treatment Room" on patient-facing billing statements — a label that does not correspond to the code transmitted to insurers and that does not appear in the chargemaster under that description — compounds this breach by ensuring that neither the chargemaster nor the billing statement provided Plaintiff or the Class with accurate information about the charges applied to their accounts. This practice, confirmed by the Healthcare Provider Defendants' own administrative staff to have been uniformly applied since 2020, cannot be characterized as anything other than a sustained and deliberate contradiction of the accuracy representations the Healthcare Provider Defendants published for patients' benefit.

85. Plaintiff and the Class performed their obligations under the patient-provider contract by presenting for services and incurring the financial obligations associated with those services. Plaintiff and the Class had no reason to suspect that the Healthcare Provider Defendants would apply billing codes that directly contradicted the billing methodology the Healthcare Provider Defendants themselves had defined and published for patients' benefit.

86. The Healthcare Provider Defendants' breaches were material. The deliberate designation of Revenue Code 0361 (OR Services) as the primary facility fee code — applied alongside Revenue Code 0510 (General Outpatient Clinic), which correctly identified the clinic-based nature of the visit in the Healthcare Provider Defendants' own insurer-facing claim — directly and substantially inflated the facility fees charged to Plaintiff and the Class, generating

charges of $716.00 for a routine office visit that should have been billed at a fraction of that amount under the billing methodology the Healthcare Provider Defendants expressly represented they would use. The breach was not a matter of degree or interpretation — the Healthcare Provider Defendants' own Provider-Based Billing Fact Sheet defined the scope of permissible facility fees as covering "the use of the room, any medical or technical supplies, equipment and support staff," a description that cannot by any reasonable construction encompass OR-level surgical facility fees generated by a code the Healthcare Provider Defendants' own contemporaneous claim filing confirms was applied to a routine clinic visit. The materiality of this breach is further demonstrated by its consequences: Plaintiff's account was referred to Team Recovery Inc. for collection of the fraudulently inflated balance, resulting in damage to Plaintiff's credit — harm that flowed directly and foreseeably from the Healthcare Provider Defendants' application of a billing methodology that their own published representations did not authorize and could not justify.

87. As a direct and proximate result of the Healthcare Provider Defendants' breaches of contract, Plaintiff and the Class have suffered actual damages including fraudulently inflated facility fees applied to their accounts in excess of what the Healthcare Provider Defendants' own billing representations authorized; deductible amounts consumed by charges that exceeded the scope of facility fees the Healthcare Provider Defendants contracted to charge; damage to credit scores and creditworthiness resulting from collection activity on balances that exceeded the contractually represented charges; and time and expense incurred in disputing charges that violated the Healthcare Provider Defendants' own published billing representations.

88. Plaintiff and the Class are entitled to compensatory damages in an amount to be determined at trial, representing the difference between the amounts charged and collected under Revenue Codes 036X and 076X and the amounts the Healthcare Provider Defendants were

contractually authorized to charge under their own published billing representations, together with all consequential damages flowing from the Healthcare Provider Defendants' material breaches of contract.

**COUNT V**
**UNJUST ENRICHMENT**
***On Behalf of Plaintiff and the Class Against the Healthcare Provider Defendants***

89. Plaintiff alleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

90. Plaintiff pleads this Count in the alternative to Count IV (Breach of Contract) pursuant to Federal Rule of Civil Procedure 8(d)(3). To the extent the Court determines that no express contract governs the relationship between Plaintiff and the Class and the Healthcare Provider Defendants, or that the contract does not cover the specific conduct alleged herein, Plaintiff and the Class are entitled to recover under the theory of unjust enrichment as set forth below.

91. Plaintiff and the Class conferred a direct and measurable financial benefit upon the Healthcare Provider Defendants through their payment of, and obligation to pay, fraudulently inflated facility fees generated by the Healthcare Provider Defendants' systematic misuse of Revenue Code 0361 (OR Services) as the primary facility fee code for services that should have been billed exclusively under Revenue Code 0510 (General Outpatient Clinic). The fraudulent nature of this enrichment is confirmed by the Healthcare Provider Defendants' own billing conduct: by simultaneously applying Revenue Code 0510 to the office visit component of these encounters — correctly identifying the clinic-based nature of the services in their insurer-facing claims — while designating Revenue Code 0361 as the primary surgical code driving reimbursement, the Healthcare Provider Defendants collected facility fees at surgical reimbursement rates for services

they themselves acknowledged, through their own code selection, were routine outpatient clinic visits. The benefit conferred upon the Healthcare Provider Defendants through this scheme — the difference between surgical-level OR Services reimbursements and the clinic-level reimbursements to which they were actually entitled — was obtained not through the legitimate provision of services commensurate with the fees charged, but through the deliberate and knowing misapplication of a surgical revenue code to non-surgical encounters.

92. This benefit was conferred in multiple forms: through insurance payments made by UHC and other insurers on behalf of Plaintiff and Class members for fraudulently coded claims; through the application of fraudulent charges to Plaintiff's and Class members' insurance deductibles, consuming deductible amounts that would otherwise have been available for legitimate medical expenses; and through direct payments made by Class members who paid the fraudulently inflated balances without dispute. Upon information and belief, the Healthcare Provider Defendants have received and retained millions of dollars in fraudulently obtained facility fees from Plaintiff and the Class since 2020.

93. The Healthcare Provider Defendants had actual knowledge of the benefit they received through their fraudulent billing practices. The deliberate designation of Revenue Code 0361 (OR Services) as the primary facility fee code was not accidental — it was a calculated coding decision made with full knowledge that OR facility fees generate substantially higher reimbursements than clinic service fees. That knowledge is established not by inference but by the Healthcare Provider Defendants' own billing conduct: by simultaneously applying Revenue Code 0510 (General Outpatient Clinic) to the office visit component of the same encounters, the Healthcare Provider Defendants demonstrated contemporaneous awareness that the services rendered were routine clinic visits — and then designated Revenue Code 0361 as the primary

surgical code anyway, knowing that its designation would cause UHC and other insurers to process and reimburse the encounter at surgical reimbursement rates.

94. The Healthcare Provider Defendants further demonstrated their awareness of the benefit by referring disputed balances to Team Recovery Inc. for collection and credit reporting rather than investigating or correcting the fraudulent charges.

95. The Healthcare Provider Defendants' retention of the benefits conferred by Plaintiff and the Class is unjust under the circumstances. The benefit was obtained not through the legitimate provision of services commensurate with the fees charged, but through a deliberate two-step billing scheme: first, unbundling CPT Code 51798 from the office visit Evaluation & Management code to create a procedural predicate that did not otherwise exist; and second, designating Revenue Code 0361 (OR Services) as the primary facility fee code for an encounter that the Healthcare Provider Defendants' own simultaneous application of Revenue Code 0510 (General Outpatient Clinic) confirms was a routine clinic visit. Plaintiff and the Class received no value commensurate with the inflated charges — they received routine office-based services while being billed at surgical reimbursement rates driven entirely by a revenue code designation that the Healthcare Provider Defendants' own claim filing demonstrates they knew was inapplicable to the services actually rendered.

96. The Healthcare Provider Defendants exploited patients' lack of familiarity with revenue codes and medical billing practices to systematically extract payments to which they were not entitled, continued to do so for more than four years despite knowing the billing was improper, and then compounded the harm by pursuing collection on fraudulent balances and damaging patients' credit when they refused to pay. Allowing the Healthcare Provider Defendants to retain the financial benefit of this scheme would reward deliberate healthcare fraud and incentivize its

continuation.

97. The Healthcare Provider Defendants' fraudulent billing scheme has resulted in their receipt and retention of payments and payment obligations to which they were not entitled. The measure of the Healthcare Provider Defendants' unjust enrichment is the difference between the amounts they charged and collected — or sought to collect — by designating Revenue Code 0361 (OR Services) as the primary facility fee code for routine clinic visits, and the amounts they would have been entitled to charge had Revenue Code 0510 (General Outpatient Clinic) been applied as the sole facility fee code without the surgical reimbursement premium generated by the 0361 designation. That difference represents the precise financial benefit the Healthcare Provider Defendants extracted from Plaintiff, the Class, and their respective insurers through the deliberate two-step scheme of unbundling CPT Code 51798 to create a surgical predicate and then designating Revenue Code 0361 to convert that predicate into inflated facility fee reimbursements — reimbursements that the Healthcare Provider Defendants' own simultaneous application of Revenue Code 0510 to the same encounters confirms they knew they were not entitled to collect.

98. As a direct and proximate result of the Healthcare Provider Defendants' unjust enrichment, Plaintiff and the Class are entitled to restitution of all amounts by which the Healthcare Provider Defendants were unjustly enriched at their expense, including all facility fee reimbursements collected or applied at surgical rates through the designation of Revenue Code 0361 (OR Services) as the primary facility fee code for encounters that should have been billed exclusively under Revenue Code 0510 (General Outpatient Clinic) as routine clinic visits; all deductible amounts consumed by the fraudulent surgical reimbursement premium generated by the 0361 designation and all consequential damages flowing from the Healthcare Provider Defendants' retention of fraudulently obtained benefits, including damages arising from collection

activity and credit reporting on debts created through the billing scheme described herein.

**COUNT VI**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 et seq.**
***On Behalf of Plaintiff Brigitte Radich Against Team Recovery, Inc.***

99. Plaintiff alleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

100. The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from using false, deceptive, misleading, unfair, or unconscionable means in connection with the collection of any debt. 15 U.S.C. §§ 1692e, 1692f.

101. Plaintiff Brigitte Radich is a "consumer" within the meaning of 15 U.S.C. § 1692a(3), as she is a natural person allegedly obligated to pay a debt.

102. Team Recovery is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), as it is a business whose principal purpose is the collection of debts owed or due another, and it regularly collects or attempts to collect debts owed or due another.

103. Team Recovery is not a creditor as defined by 15 U.S.C. § 1692a(4) — it did not extend credit to Plaintiff, nor is it the entity to whom the debt was originally owed. The Healthcare Provider Defendants assigned or transferred Plaintiff's alleged $716.00 balance to Team Recovery for collection.

104. The alleged debt of $716.00 that Team Recovery sought to collect from Plaintiff was not legitimately owed. As described herein, the debt originated entirely from the Healthcare Provider Defendants' deliberate designation of Revenue Code 0361 (OR Services) as the primary facility fee code for a routine office visit at a provider-based outpatient clinic that does not contain operating rooms, in violation of CMS global billing and bundling rules. The billing documentation underlying the alleged debt simultaneously reflected Revenue Code 0510 (General Outpatient

Clinic) as the code transmitted to UHC for the office visit component of the encounter — correctly identifying the clinic-based nature of the visit in the insurer-facing claim — while the patient-facing billing statement described the corresponding $357.00 charge as "Treatment Room," a label that does not correspond to the revenue code actually billed. The primary $359.00 charge billed under Revenue Code 0361 was described on the patient-facing statement as "OR Services" while identifying the service location as "Southwoods Health – Howland" — a facility that by the Healthcare Provider Defendants' own admission does not contain operating rooms. The debt was the product of a fraudulent billing scheme, rendering it void ab initio and not lawfully owed by Plaintiff.

105. Team Recovery violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with its collection of the alleged debt.

106. Team Recovery falsely represented to Plaintiff and to consumer credit reporting agencies that the $716.00 balance was a valid and enforceable debt, when in fact it was fraudulently created through deliberate billing code manipulation. On or about October 1, 2025 — more than seventeen months after Plaintiff first disputed the fraudulent charges with the Healthcare Provider Defendants and UHC — Team Recovery reported the alleged debt to one or more consumer credit reporting agencies without having first adequately verified that the debt was legitimate or lawfully owed, in violation of 15 U.S.C. § 1692e(8), which prohibits the communication of credit information that is known or should be known to be false.

107. Team Recovery's attempt to collect and report a debt it knew or should have known was fraudulently created constitutes a false representation of the character, amount, and legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2)(A).

108. Team Recovery independently violated 15 U.S.C. § 1692f by employing unfair and

unconscionable means in connection with its collection of the alleged debt.

109. Team Recovery collected or attempted to collect an amount not expressly authorized by any legitimate agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1), because the $716.00 balance was never legitimately owed — it was the product of deliberate revenue code manipulation applied to services that did not warrant the facility fees charged. Team Recovery further damaged Plaintiff's credit and reputation by reporting a fraudulently created debt to consumer credit reporting agencies without conducting the diligence necessary to verify that the debt was lawfully owed before doing so.

110. Team Recovery knew or should have known that the debt it was collecting was fraudulently created. The billing documentation on its face reflected an internal contradiction that a reasonably prudent debt collector exercising due diligence would have identified before initiating collection activity or reporting the debt to credit agencies: the underlying billing statement charged $359.00 for "OR Services" while simultaneously identifying the service location as "Southwoods Health – Howland," a facility that does not contain operating rooms. No legitimate "OR Services" charge can arise from a facility that by its own operator's admission has no operating rooms and refers all surgical patients elsewhere.

111. This facial inconsistency was sufficient to place a reasonably prudent debt collector on notice that the underlying debt required verification before collection activity commenced. By proceeding to collect and report the debt without conducting that verification, Team Recovery became an instrument of the Healthcare Provider Defendants' fraudulent billing scheme and extended its harm directly to Plaintiff's credit.

112. Upon information and belief, Team Recovery failed to provide adequate debt validation as required by 15 U.S.C. § 1692g, including by failing to provide verification of the

debt upon Plaintiff's request and failing to cease collection activities — including credit reporting — pending verification of the disputed debt. Plaintiff had disputed the underlying charges with the Healthcare Provider Defendants and UHC prior to Team Recovery's October 2025 credit reporting, and Team Recovery's failure to verify the legitimacy of the debt before reporting it to credit agencies violated both the letter and the spirit of the FDCPA's debt validation requirements.

113. As a direct and proximate result of Team Recovery's violations of the FDCPA, Plaintiff has suffered damage to her credit report and credit score; emotional distress, anxiety, and frustration caused by Team Recovery's collection efforts on a debt Plaintiff does not legitimately owe; harm to her reputation and creditworthiness; and time and expense incurred in attempting to dispute and resolve the fraudulent debt. Plaintiff is entitled to statutory damages of up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT VII
## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
## R.C. 1345.01, *et al.*
***On Behalf of Plaintiff Brigitte Radich Against Team Recovery, Inc.***

114. Plaintiff alleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

115. The Ohio Consumer Sales Practices Act ("CSPA") prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with a consumer transaction. O.R.C. §§ 1345.02, 1345.03.

116. Plaintiff is a "consumer" within the meaning of O.R.C. § 1345.01(D), as she is a person who engaged in a consumer transaction with a supplier.

117. Team Recovery is a "supplier" within the meaning of O.R.C. § 1345.01(C), as it is a person engaged in the business of effecting consumer transactions through the collection of debts

from Ohio consumers.

118. Team Recovery's debt collection activities directed at Plaintiff constitute a "consumer transaction" within the meaning of O.R.C. § 1345.01(A), as they arise from services provided to Plaintiff primarily for personal, family, or household purposes.

119. Team Recovery violated O.R.C. § 1345.02 by engaging in unfair and deceptive acts and practices in connection with its collection of the alleged $716.00 debt. Team Recovery represented to Plaintiff and to consumer credit reporting agencies that the alleged debt was valid, enforceable, and legitimately owed, when in fact the debt was the product of the Healthcare Provider Defendants' deliberate designation of Revenue Code 0361 (OR Services) as the primary facility fee code for a routine office visit at a provider-based outpatient clinic that does not contain operating rooms. The billing documentation underlying the debt simultaneously reflected Revenue Code 0510 (General Outpatient Clinic) for the office visit component — correctly identifying the clinic-based nature of the encounter in the insurer-facing claim — while the patient-facing statement described that charge as "Treatment Room," a label inconsistent with the code actually transmitted to UHC. By representing that Plaintiff was legally obligated to pay $716.00 for services that were fraudulently billed and coded, Team Recovery misrepresented the character, amount, and legal status of the alleged debt in violation of O.R.C. § 1345.02(B)(1) and (B)(5). By reporting the fraudulently created debt to consumer credit reporting agencies without adequate verification, Team Recovery further made false and misleading representations regarding the existence and enforceability of the debt in violation of O.R.C. § 1345.02(B)(6).

120. By representing that Plaintiff was legally obligated to pay $716.00 for services that were fraudulently billed and coded, Team Recovery misrepresented the character, amount, and legal status of the alleged debt in violation of O.R.C. § 1345.02(B)(1) and (B)(5). By reporting the

fraudulently created debt to consumer credit reporting agencies without adequate verification, Team Recovery further made false and misleading representations regarding the existence and enforceability of the debt in violation of O.R.C. § 1345.02(B)(6).

121. The deceptive nature of Team Recovery's conduct is compounded by the facial inconsistency in the underlying billing documentation that Team Recovery failed to investigate before initiating collection activity. The billing statement on which Team Recovery based its collection efforts simultaneously charged $359.00 for "OR Services" while identifying the service location as "Southwoods Health – Howland" — a facility that does not contain operating rooms and refers all surgical patients to the Boardman Hospital. A debt collector acting in good faith and consistent with fair dealing would have identified this inconsistency and verified the legitimacy of the underlying debt before reporting it to credit agencies and pursuing collection from an Ohio consumer. Team Recovery did neither.

122. Team Recovery's conduct, demonstrated by the circumstances surrounding its credit reporting, independently violated O.R.C. § 1345.03, which prohibits suppliers from engaging in unconscionable acts or practices in connection with a consumer transaction.

123. Plaintiff first received the May 2, 2024 billing statement from the Healthcare Provider Defendants and promptly disputed the charges — contacting the Healthcare Provider Defendants directly, reporting the fraud to UHC, and escalating her dispute through multiple levels of UHC management. Despite this active and documented dispute, Team Recovery reported the $716.00 balance to consumer credit reporting agencies on or about October 1, 2025 — more than seventeen months after Plaintiff first disputed the charges — without notifying Plaintiff that her account had been referred to collections, without providing her an opportunity to dispute the debt prior to credit reporting, and without conducting any meaningful verification of the debt's

legitimacy. Damaging a consumer's credit based on a fraudulently created debt, without notice and without verification, is oppressive and unconscionable under the totality of the circumstances.

124. Team Recovery's violations of the CSPA were committed knowingly within the meaning of O.R.C. § 1345.09(B). The facial inconsistency in the underlying billing documentation — OR Services billed from a facility with no operating rooms — was sufficient to place Team Recovery on actual notice that the debt required verification before collection activity commenced. A debt collector that proceeds to report a debt to consumer credit reporting agencies in the face of such an obvious red flag, without conducting adequate verification, does so knowingly within the meaning of the CSPA. The Ohio Attorney General has declared through rules and guidelines that misrepresenting the amount or legal status of a debt, and attempting to collect a debt that the collector knows or should know is not legitimately owed, constitute unfair and deceptive acts or practices under the CSPA — conduct that Team Recovery's actions squarely reflect.

125. As a direct and proximate result of Team Recovery's violations of the Ohio Consumer Sales Practices Act, Plaintiff has suffered damage to her credit report and credit score resulting from Team Recovery's false reporting of the fraudulent debt; emotional distress, anxiety, and frustration caused by Team Recovery's collection efforts on a debt Plaintiff does not legitimately owe; harm to her reputation and creditworthiness; and time and expense incurred in attempting to dispute and resolve the fraudulent debt.

126. Plaintiff is entitled to actual damages pursuant to O.R.C. § 1345.09(A); treble damages for knowing violations pursuant to O.R.C. § 1345.09(B); and reasonable attorneys' fees and costs pursuant to O.R.C. § 1345.09(F). Plaintiff further seeks an order requiring Team Recovery to immediately cease all collection activity on the fraudulent debt, delete all negative credit reporting associated with the fraudulent debt, and notify all consumer credit reporting

agencies to which it furnished information that the debt was disputed and fraudulently created.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brigitte Radich, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in favor of Plaintiff and the Class and against Defendants as follows:

A. That the Court certify this action as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), appoint Plaintiff Brigitte Radich as Class representative, and appoint Plaintiff's counsel as counsel for the Class;

B. That the Court award Plaintiff and the Class actual, compensatory, and consequential damages against the Healthcare Provider Defendants for their violations of the Federal RICO Act (Count I), the Ohio Consumer Sales Practices Act (Count II), and the common law of fraud (Count III), breach of contract (IV) and unjust enrichment (Count V), in amounts to be determined at trial;

C. That the Court award Plaintiff and the Class treble damages against the Healthcare Provider Defendants pursuant to 18 U.S.C. § 1964(c) for their RICO violations (Count I), and pursuant to O.R.C. § 1345.09(B) for their knowing violations of the CSPA (Count II);

D. That the Court award Plaintiff and the Class punitive damages against the Healthcare Provider Defendants based on their knowing, deliberate, and years-long scheme to defraud patients and their insurers through systematic revenue code manipulation (Count III);

E. That the Court award Plaintiff and the Class restitution of all amounts by which

the Healthcare Provider Defendants were unjustly enriched through their fraudulent billing scheme (Count V);

F. That the Court award Plaintiff statutory damages of up to $1,000.00, actual damages, and attorneys' fees and costs against Team Recovery pursuant to 15 U.S.C. § 1692k for its violations of the FDCPA (Count VI), and treble damages and attorneys' fees and costs pursuant to O.R.C. § 1345.09(B) and (F) for its knowing violations of the CSPA (Count VII);

G. That the Court enter injunctive and declaratory relief against all Defendants, including: (i) an order requiring the Healthcare Provider Defendants to immediately cease their designation of Revenue Code 0361 (OR Services) as a facility fee code for routine office visits at provider-based outpatient locations without operating rooms; to cease the use of patient-facing billing statement descriptions that do not correspond to the revenue codes transmitted to insurers; to implement billing compliance procedures sufficient to ensure all future claims are coded in accordance with CMS billing rules and that patient-facing billing documentation accurately reflects the revenue codes underlying the charges applied to patients' accounts; and (ii) an order requiring Team Recovery to immediately cease all collection activity on the fraudulent debt, delete all associated negative credit reporting, and notify all consumer credit reporting agencies that the debt was disputed and fraudulently created.

H. That the Court award Plaintiff and the Class reasonable attorneys' fees and costs as permitted under 18 U.S.C. § 1964(c), O.R.C. § 1345.09(F), and 15 U.S.C. § 1692k(a)(3);

I. That the Court award pre- and post-judgment interest as permitted by law; and

J. That the Court grant such further and other relief as it deems just and appropriate.

Respectfully Submitted,

*/s/ Marc E. Dann*

Marc E. Dann (OH 0039425)
Marita I. Ramirez (0101882)
Brian D Flick (OH 0081605)
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
*notices@dannlaw.com*

*Counsel for Plaintiff Brigitte Radich and the Proposed Class*

**JURY TRIAL DEMANDED**

Plaintiff Brigitte Radich hereby demands a trial by jury on all claims so triable.

*/s/ Marc E. Dann*

Marc E. Dann (OH 0039425)
Marita I. Ramirez (0101882)
Brian D Flick (OH 0081605)
**DannLaw**

*Counsel for Plaintiff Brigitte Radich and the Proposed Class*